# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BEVERLY MCKAIG-FORTEAU | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| OXFORD MANAGEMENT | ) | |
| GROUP, LLC | ) | |
| <u>Serve at</u>: | ) | JURY TRIAL DEMANDED |
| J. Chris Dennis | ) | |
| 125 N Market Suite 1416, | ) | |
| WICHITA, KS 67202 | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

## <u>COMPLAINT</u>

COMES NOW Plaintiff Beverly Forteau-McKaig ("Plaintiff"), by and through the undersigned counsel, and states and alleges as follows against Defendant Oxford Senior Living ("Defendant").

## <u>NATURE OF THE CLAIM</u>

1.     This action for legal and equitable relief arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA/ADAA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and 42 U.S.C. § 1981.

2.     Plaintiff seeks all relief allowed by the ADA/ADAA, Title VII, and § 1981, to remedy her claims.

1

## PARTIES

3.     Plaintiff Beverly Forteau-McKaig is, and, at all times relevant to the allegations in this Complaint, was a resident and citizen of the State of Kansas.

4.     At all times relevant herein, Plaintiff was employed by Defendant.

5.     Defendant is a Kansas Limited Liability Company conducting business in the State of Kansas.

6.     Upon information and belief, Defendant employs more than fifteen (15) persons within the State of Kansas and, at all relevant times herein, was an "employer" within the meaning of the ADA/ADAA and Title VII.

7.     Defendant is an entity, and is thus incapable of acting on its own behalf and therefore acts through agents. It is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their agency, its own negligence, the acts of its agents which it ratifies, injuries incurred by agents' performance of its non-delegable duties, and acts its agents take by virtue of their agency or employment with Defendant.

8.     At all times mentioned herein, each of Defendant's employees referenced in this Complaint were the agents, servants, and employees of Defendant who were all acting within the course and scope of their employment with Defendant.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the federal laws: the ADA/ADAA, Title VII and 42 U.S.C § 1981.

10.    All or a substantial portion of Defendant's unlawful employment practices complained of herein occurred in Kansas, and, accordingly, jurisdiction and venue are proper in

this Court pursuant to 28 U.S.C § 1391(b).

## FACTUAL ALLEGATIONS

11.     Plaintiff is an African-American female.

12.     On or about February 14, 2017, Plaintiff was hired by Defendant as a Life Enrichment Assistant.

13.     At the time of the events giving rise to Plaintiff's claims, she was employed as a Life Engagement Assistant.

14.     The job description for a Life Engagement Assistant includes the ability to lift 50 pounds.

15.     At the time Plaintiff started her employment with Defendant, the job description she received did not include any such requirements.

16.     Throughout her employment, Plaintiff reported to the Life Enrichment Assistant Director, Micala Gingrich-Gaylord.

17.     Before her employment with Defendant, Plaintiff had the following injuries: neck spurs and arthritis, right shoulder/ rotator cuff tear, bursitis and tendinitis in both arms/ shoulders, carpal tunnel syndrome of both hands, forearm and wrist impairment, right thumb trigger, and left ring trigger cyst on right hand.

18.     On or about June 26, 2017, Plaintiff suffered an injury, when she was trying to move a table at work, which resulted in a back tear, and/or worsened her pre-existing conditions of bulging discs, advanced degenerative lumbar spine, acute-appearing posterior annular tear, nerve impingement and central canal narrowing.

19.     At the time, Plaintiff did not realize the extent of her injury.

20.     On or about June 27, 2017, when Plaintiff tried to get up to get ready for work, she

could not get out of bed without help, and was only able to go to work after she took Aleve and applied heat to her back.

21.     Sometime between June 27 and July 1, 2017, Plaintiff informed Ms. Gingrich-Gaylord, that she was injured at work.

22.     Plaintiff's supervisor, Ms. Gingrich-Gaylord, did not complete an incident report and commented about Plaintiff's prior back strain, which Plaintiff had previously mentioned to Ms. Gingrich-Gaylord.

23.     By July 3, 2017, Plaintiff started limping and experiencing pain down her right leg.

24.     Plaintiff tried to seek medical assistance on June 30 and July 3, 2017, but was unable to see her doctor.

25.     Despite the pain, Plaintiff worked on July 4-6, 2017, which exacerbated her pain, such that by July 6, 2017, Plaintiff could hardly walk.

26.     On or about July 6, 2017, Plaintiff saw her doctor, who prescribed pain medication and referred her for an MRI.

27.     Although Plaintiff continued experiencing pain, despite taking the pain medication, she worked July 8 and 10, 2017.

28.     On or about July 10, 2017, Plaintiff received a call from her doctor's office advising her of the results of the MRI.

29.     At the time Plaintiff received a call, she was in the work space right outside of Ms. Gingrich-Gaylord's office.

30.     Because after learning about the results of the MRI, Plaintiff started crying, Ms. Gingrich-Gaylord came out of her office, and Plaintiff told her about the MRI results.

31.     Then, Plaintiff went to help one of the residents, who was committed to a

wheelchair, to get to a class, as instructed by the Head Nurse.

32.     When Plaintiff was helping this resident to get into his wheelchair, he started falling, and Plaintiff had to catch him so that he would not fall, which aggravated Plaintiff's back condition.

33.     On or about July 11, 2017, around approximately 3:00 p.m., while Plaintiff was helping with a balloon ball game in the Memory Care unit, she started experiencing acute pain when she tried to pick up balloons, but she stayed at work.

34.     Later that afternoon, at approximately 5:45 p.m., when Plaintiff was helping one of the residents to get up to a table and eat ice-cream, she felt a very sharp pain down her right leg and later her pain got so bad that she thought she was going to pass out.

35.     Because the pain was so strong, Plaintiff had to leave.

36.     July 11, 2017 was Plaintiff's last day at work.

37.     When Plaintiff got home that night, she was throwing up and crying.

38.     Plaintiff called Ms. Gingrich-Gaylord to let her know that she would not be able to come to work the next day, July 12, 2017.

39.     On or about July 12, 2017, Plaintiff discussed with Ms. Gingrich-Gaylord that Plaintiff needed a leave until July 20, 2017, with 4-6 weeks of physical therapy to follow.

40.     Between July 12 and 17, 2017, Plaintiff spent most of her time in bed waiting for her doctor to get her in for pain management treatment.

41.     On or about July 13, 2017, Plaintiff sent a text to Ms. Gingrich-Gaylord, stating that Plaintiff's spinal injection is scheduled for July 18, 2017, to be followed by 4-6 weeks of physical therapy starting on July 20, 2017.

42.     Ms. Gingrich-Gaylord responded with a text message stating: "I will need a doctor

note with all that brought up as soon as you can. Am I reading correctly you are out 4-6 weeks."

43.    Defendant's Human Resources Coordinator Tiffany Pyles sent a letter to Plaintiff dated July 13, 2017, informing Plaintiff that:

- Ms. Gingrich-Gaylord informed Ms. Pyles about Plaintiff's request for a leave through July 20, 2017 and the necessity of 4-6 weeks of physical therapy, during which Plaintiff might have to work with restrictions;

- Plaintiff was not eligible for an FMLA leave because she had not met the FMLA's 12-month length-of-service requirement;

- Defendant could not accommodate Plaintiff returning to work with restrictions, but could accommodate a medical leave of absence for the duration of physical therapy;

- Plaintiff could use any paid time off she had accrued but after she exhausts her PTO, the leave will be unpaid;

- Pursuant to Defendant's team member handbook, when on a non-FMLA personal leave, team members were not guaranteed reinstatement to their former position or any other positions with Defendant.

44.    Plaintiff did not receive this letter until on or about July 21, 2017.

45.    In the meantime, on or about July 13 and 14, 2017, per Ms. Gingrich-Gaylord's instruction, Plaintiff requested information from her doctor's office and faxed the paperwork she received from Defendant to her doctor's office to be filled out and faxed to Defendant's HR department.

46.    On or about July 19, 2017, Plaintiff's doctor released Plaintiff to work starting July 24, 2017, with a restriction of "no lifting greater than 10 pounds."

47.     Between July 12 and 21, Plaintiff kept in constant contact with Ms. Gingrich-Gaylord, updating her about Plaintiff's condition.

48.     On or about July 21, 2017, at approximately 11:00 a.m., Plaintiff received a call from Ms. Gingrich-Gaylord, who mentioned the July 13, 2017 letter from Ms. Pyles, and explained the contents of the letter.

49.     Ms. Gingrich-Gaylord explained that Defendant would not allow Plaintiff to come back to work with restrictions and apologized for letting Plaintiff go.

50.     When Plaintiff tried to remind Ms. Gingrich-Gaylord that her condition resulted from a workplace injury, Ms. Gingrich-Gaylord did not listen to her.

51.     On or about July 21, 2017, Plaintiff mailed a letter to Ms. Pyles describing all the events.

52.     On or about July 24, 2017, Plaintiff received an incident report form by email, which she filled out and emailed back that same day.

53.     Defendant did not engage in an interactive process and made no effort to ascertain whether Plaintiff could work with reasonable accommodations.

54.     At the same time, Defendant allowed its Caucasian employees with disabilities and/or perceived disabilities and/or a record of disabilities to return to work, despite their work restrictions.

55.     Specifically, Janet Parson, a Caucasian female who was employed in a similar position as Plaintiff and who had a knee replacement surgery, was allowed to return to work for the same job as Plaintiff, despite having to use a wheelchair and a walker.

56.     Another Caucasian employee of Defendant, Tammy Hollins, was allowed to return to work, despite having back issues, and was scheduled to work a shift that required less lifting

than the shift she had previously worked.

57.     Another Caucasian employee, Jamie Morrow, was allowed to return to work, after she fell off a porch and had to wear a boot up to her knee and use crutches, despite these restrictions.

58.     Plaintiff submitted an incident report for workers' compensation on July 25, 2017.

59.     As of August 12, 2019, although Plaintiff was still entered in Defendant's computer system, she was assigned no hours of work.

## CONDITIONS PRECEDENT

60.     **On or about October 10, 2017,** Plaintiff submitted an inquiry regarding employment discrimination to the Equal Employment Opportunity Commission ("EEOC"). The EEOC assigned No. 28D-2018-00086 to the Charge.

61.     **On or about October 13, 2017**, the EEOC sent the inquiry to the Kansas Human Rights Commission ("KHRC") for further processing pursuant to a work sharing agreement.

62.     After the KHRC assisted Plaintiff in preparing a formal complaint, Plaintiff filed her administrative complaint with the KHRC on or about **November 6, 2017,** alleging claims of disability and race discrimination. The KHRC assigned Plaintiff's Complaint No. 39657-18. A true and correct copy of the Complaint is attached hereto as **Exhibit A** and incorporated herein by reference.

63.     **On December 28, 2017**, Plaintiff filed an amended administrative complaint to add a claim of retaliation. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit B** and incorporated herein by reference.

64.     **On August 26, 2019**, after completing an investigation, KHRC issued a determination of probable cause.

65.     **On September 26, 2019**, the EEOC issued a Notice of Right to Sue concerning Charge No. 28D-2018-00086.  A true and accurate copy of the Right to Sue Notice is attached hereto as **Exhibit C** and is incorporated herein by reference.

66.     This action has been timely filed with this Court, and Plaintiff has met all conditions precedent to filing this action.

## COUNT I
## ADA/ADAA – Discrimination
## (42 U.S.C. § 12101 *et seq.*)

67.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

68.     The ADA/ADAAA prohibits discrimination against a person who has or is regarded as having a physical impairment or has a record of disability that substantially limits one or more major life activities.

69.     Plaintiff's neck spurs and arthritis, right shoulder/ rotator cuff tear, bursitis and tendinitis in both arms/ shoulders, carpal tunnel syndrome of both hands, forearm and wrist impairment, right thumb trigger, left ring trigger cyst on right hand, her back tear and bulging disk, advanced degenerative lumbar spine, acute-appearing posterior annular tear, nerve impingement and central canal narrowing constituted a physical impairment or was being regarded as having such impairment that substantially limited her major life activities, including but not limited to her ability to lift, push, pull, and grip objects, and her mobility.

70.     Plaintiff could perform the essential functions of her job with or without reasonable accommodation.

71.     Plaintiff requested a reasonable accommodation for her disability and/or perceived disability and/or record of disability, or the need for disability was obvious to Defendant.

72.     Defendant engaged in conduct prohibited by the ADA/ADAAA, including but not limited to forcing Plaintiff to take an unpaid leave that she did not request, failing to engage in an interactive process to determine a reasonable accommodation for Plaintiff, effectively refusing to reinstate Plaintiff in her previously held position or any other position with any work restrictions.

73.     The conduct and actions by the above-described perpetrators, including but not limited to Ms. Gingrich-Gaylord and Ms. Pyles, were performed on the basis of Plaintiff's disability and/or perceived disability and/or record of disability and constitute discrimination based on disability.

74.     Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein, including but not limited to being forced to take an unpaid medical leave that she did not request, and being prevented from returning to work, with or without reasonable accommodations.

75.     The conduct of Defendant, described herein, would have detrimentally affected a reasonable person in Plaintiff's position.

76.     Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

77.     Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person who has, is regarded as having, or has a record of a physical impairment that substantially limits one or more major life activities.

78.     Supervisory and management-level employees knew or should have known of the discrimination, but failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop discrimination against Plaintiff based on her disability and/or perceived disability and/or record of disability.

79.     Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint; for a finding that she has been subjected to unlawful discrimination as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of front pay; for an award of back pay; pre-judgment and post-judgment interest as provided by law; for her costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

## COUNT II
### ADA/ADAA – Retaliation
### (42 U.S.C. § 12203)

80.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

81.     The ADA/ADAAA prohibits retaliation against an individual who has opposed disability discrimination and/or retaliation under the ADA/ADAA.

82.     Plaintiff engaged in protected activity by opposing discrimination based on her disability and/or perceived disability and/or record of disability.

83.     Plaintiff's actions in requesting a reasonable accommodation for her disability and/or perceived disability and/or record of disability and exercising her right to return to work constituted protected activities.

84.     As a result of Plaintiff's protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to forcing Plaintiff to take

an unpaid leave that she did not request, preventing Plaintiff from returning to work with any restrictions, after her doctor released her to work duty with a restriction of "no lifting greater than 10 pounds."

85.     Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

86.     At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

87.     Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

88.     Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count II of her Complaint; for a finding that she has been subjected to unlawful retaliation as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of front pay; for an award of back pay; pre-judgment and post-judgment interest, as provided by law; for her costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

## COUNT III
### Race Discrimination
### (42 U.S.C. § 2000e *et seq.*)

89.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

90.     During the course and scope of Plaintiff's employment, Defendant's representatives, while acting within the course and scope of their employment, engaged in intentional discrimination of Plaintiff based on her race (African American) in failing to provide Plaintiff with reasonable accommodations for her disability and/or perceived disability and/or record of disability and preventing her from returning to work with any work restrictions, while providing reasonable accommodations for Defendant's Caucasian employees with disabilities and/or perceived disabilities and/or a record of disabilities and allowing them to return to work with restrictions, in violation of Title VII.

91.     The discrimination to which Defendant subjected Plaintiff was sufficiently severe or pervasive in that it had the purpose and effect of unreasonably interfering with the terms, conditions, and privileges of Plaintiff's employment.

92.     The terms, conditions, and privileges of Plaintiff's employment were affected in that she was forced to take an unpaid leave that she did not request and was prevented from returning to work.

93.     The conduct as described herein would have offended a reasonable person of the same race in Plaintiff's position.

94.     The actions and conduct of Defendant's representatives acting within the course and scope of employment detrimentally affected Plaintiff.

95.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages, including lost wages and emotional distress.

96.     Defendant, through its agents and employees, engaged in the discriminatory and harassing conduct described herein with malice or reckless indifference to Plaintiff's federally protected rights.

97.     The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful discrimination prohibited by Title VII; for an award of compensatory and punitive damages; for an award of front and back pay; for her costs expended; for her reasonable attorneys' fees and expert fees as provided by 42 U.S.C. § 2000e 5(k); and for such other relief as this Court deems just and proper.

### COUNT IV
### Race Discrimination
### (42 U.S.C. § 1981)

98.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

99.     During the course and scope of Plaintiff's employment, Defendant's representatives, agents and employees, acting within the course and scope of their employment, engaged in intentional discrimination against Plaintiff based on her race in failing to provide Plaintiff with reasonable accommodations for her disability and/or perceived disability and/or record of disability, while providing such reasonable accommodations to Defendant's Caucasian employees with disabilities and/or perceived disabilities and/or a record of disabilities.

100.    As a direct and proximate result of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages, including lost wages and emotional distress.

101.    Defendant through its representatives, agents and employees engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

102.     The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of her Complaint; for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §1981; for an award of compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees; and for such other relief as this Court deems just and proper.

## COUNT V
### Wrongful Termination in Violation of Public Policy
### Workers' Compensation Retaliation

103.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

104.     Plaintiff sustained a workplace injury that resulted in a back tear and/or worsening her previously existing conditions of bulging disk, and advanced degenerative lumbar spine, acute-appearing posterior annular tear, nerve impingement and central canal narrowing.

105.     Plaintiff availed herself of workers' compensation benefits in the form of requesting a leave for her injury, seeking medical treatment for the injury, being absent from work for the injury, and submitting a workers' compensation claim.

106.     After Plaintiff availed herself of workers compensation benefits, she requested a leave and a reasonable accommodation for her workplace injury, Defendant refused to reinstate Plaintiff in her previously held position or any other position with Defendant, despite her doctor releasing her for work duty with a lifting restriction.

107.     Based on information and belief, Plaintiff was prohibited from returning to work, Defendant failed to engage in the interactive process with Plaintiff, and failed to provide accommodations for her work related injury, as a result of her exercising and requesting the benefits to which she was entitled under the Kansas Workers' Compensation Laws.

108.     Defendant violated the law and public policy by retaliating against Plaintiff because Plaintiff exercised her rights under the Kansas Workers' Compensation statute, K.S.A. § 44-501 *et seq*.

109.     As a direct and proximate result of the alleged retaliation, Plaintiff has incurred and will continue to incur lost income that she would have otherwise earned and is entitled to compensatory damages and emotional distress.

110.     The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and others from similar conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count V of her Complaint; for a finding that she has been retaliated against in violation of public policy; for an award of compensatory and punitive damages; for an award of back pay; pre-judgment and post-judgment interest, as provided by law; for her costs expended herein; and for such other and further relief as this Court deems just and proper.

16

RESPECTFULLY SUBMITTED,

HOLMAN SCHIAVONE, LLC

By:   /s/ Anne Schiavone
Anne Schiavone, KS#19669
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL:   (816) 283-8738
FAX:   (816) 283-8739
Email: aschiavone@hslawllc.com

**ATTORNEYS FOR PLAINTIFF**